IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALBA HAYDEE ALATORRE, #21834-041,<br><br>        Petitioner,<br><br>    v.<br><br>WARDEN ESTELLE DERR,<br><br>        Respondent. | CIVIL NO. 22-00516 JMS-WRP<br><br>**ORDER DISMISSING WRIT OF HABEAS CORPUS PURSUANT TO U.S.C. § 2241, ECF NO. 1** |

**ORDER DISMISSING WRIT OF HABEAS CORPUS PURSUANT TO U.S.C. § 2241, ECF NO. 1**

On December 15, 2022, the court received pro se Petitioner Alba Haydee Alatorre's ("Alatorre") "Writ of Habeas Corpus Pursuant to U.S.C. § 2241, Seeking an Order Directing the Bureau of Prisons to Apply First Step Act ('FSA') & Earned Time Credits ('ETC') to My Sentence Pursuant to 18 U.S.C. § 3632(d)(4)(C)" ("Petition").  ECF No. 1.  In the Petition, Alatorre asserts that the Bureau of Prisons ("BOP") wrongfully deemed her ineligible for First Step Act earned time credits because she is subject to an immigration detainer.  *See id.* at PageID.1; ECF No. 1-1 at PageID.4.  Respondent Estela Derr[1] ("Derr"), the

---

[1] Although Alatorre spelled Respondent's name "Estelle" in the Petition, ECF No. 1 at PageID.1, Derr corrected the spelling of her name to "Estela" in the Response, ECF No. 10 at PageID.29 n.1.

warden at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), argues, among other things, that the Petition should be dismissed as moot because the BOP recently issued Change Notice 5410.01 CN-1 ("Change Notice 5410.01"). ECF No. 10 at PageID.32–PageID.33. Change Notice 5410.01 struck language from the previously issued Program Statement 5410.01 that had disqualified federal prisoners with unresolved immigration detainers from applying earned time credits toward prerelease custody or early transfer to supervised release.[2] *See* ECF No. 10-5 at PageID.63–PageID.64. Given Change Notice 5410.01, the court agrees with Derr that Alatorre's claim is now moot. Because no exception to the mootness doctrine applies, the Petition, ECF No. 1, is DISMISSED without prejudice, but without leave to amend.

## I.  BACKGROUND

On October 10, 2019, Alatorre pleaded guilty in the United States District Court for the District of Minnesota to conspiracy to distribute 500 grams or

---

[2] Derr also argues that the Petition should be dismissed because Alatorre failed to exhaust administrative remedies. ECF No. 10 at PageID.33–PageID.37. Given the court's conclusion that the Petition must be dismissed because it is moot, the court does not reach Derr's non-jurisdictional, exhaustion argument. If Alatorre later disputes some future calculation of her good time credits, she should be sure to exhaust fully her administrative remedies. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) ("As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241."); *see also Cacayorin v. Derr*, 2023 WL 2349596, at *3 (D. Haw. Mar. 3, 2023) ("'[T]he computation of a prisoner's length of confinement is exactly the type of case in which the exhaustion of administrative remedies is appropriate.'") (quoting *Jones v. Reese*, 1998 WL 827504, at *1 (N.D. Cal. Nov. 24, 1998)).

more of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  *See* Plea Agreement and Sentencing Stipulations, *United States v. Alatorre*, No. 0:19-cr-00061-ECT-KMM-1 (D. Minn. Oct. 10, 2019), ECF No. 124.  On February 20, 2020, Alatorre was sentenced to ninety months' imprisonment and two years' supervised release.  *See* Judgment in a Criminal Case, *Alatorre*, No. 0:19-cr-00061-ECT-KMM-1 (D. Minn. Feb. 21, 2020), ECF No. 183.

Alatorre is currently incarcerated at FDC Honolulu.  *See* Federal Bureau of Prisons,  https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "21834-041"; and select "Search") (last visited Mar. 22, 2023).  The BOP's inmate locator states that Alatorre's projected release date is August 6, 2025.  *Id.*

On December 12, 2022, Alatorre signed the Petition.  ECF No. 1 at PageID.2.  In the Petition, Alatorre asserts that the BOP wrongfully deemed her ineligible for First Step Act ("FSA") earned time credits because she is subject to an immigration detainer.  *See id.* at PageID.1; ECF No. 1-1 at PageID.4.  If these earned time credits were properly applied, Alatorre contends, then she would be entitled to "immediate release."[3]  ECF No. 1 at PageID.2.  Alatorre signed a

---

[3] The basis for this assertion is unclear.  In general, the BOP can authorize prerelease custody—that is, home confinement or placement at a residential reentry center—for a period "not to exceed 12 months." 18 U.S.C. § 3624(c)(1).  Similarly, the BOP may transfer a prisoner

Supplement on January 30, 2023, in which she provided additional case citations in support of the Petition. ECF No. 9 at PageID.26.

Derr filed her Response on February 13, 2023. ECF No. 10. In the Response, Derr argues, among other things, that the Petition should be dismissed as moot because, on February 6, 2023, "the BOP issued Change Notice-1 to Program Statement 5410.01, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)* . . . which . . . removed unresolved pending charges and/or detainers as a disqualifying factor for the application of FSA earned time credits." *Id.* at PageID.32. According to Derr, in light of this policy change, Alatorre "will no longer be FSA ineligible based upon her unresolved immigration detainer[.]" *Id.* at PageID.33.

The court received Alatorre's Reply on February 24, 2023. ECF No. 11. In the Reply, Alatorre argues that the court should not dismiss the Petition because her earned time credits have not yet been applied. *Id.* at PageID.84.

On February 28, 2023, the court instructed the parties to submit supplemental briefing addressing the applicability of the voluntary cessation exception to the mootness doctrine. ECF No. 12. Alatorre argues in her

---

"to supervised release no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred." 28 C.F.R. § 523.44(d)(3); *see also* 18 U.S.C. 3624(g)(3). Section 3632(d)(4)(C) authorizes earned time credits to be applied "toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C); 28 C.F.R. § 523.44(a)(1). Given Alatorre's projected release date of August 6, 2025, even applying the maximum twelve months' earned time credits would not make her eligible for immediate release.

supplemental brief that her claim is not moot because the BOP's policy change is not "entrenched or permanent," while again noting that her earned time credits have not yet been applied. ECF No. 13 at PageID.87. Derr contends that Alatorre's claim is moot because Change Notice 5410.01 reflects "a permanent change in the way BOP determines FSA eligibility." ECF No. 14 at PageID.92. Derr explains that Alatorre's earned time credits are not yet reflected in her projected release date because "the BOP is prioritizing the processing of FSA releases based on new projected release dates." *Id.* at PageID.93. According to Derr, Alatorre is now "[eligible] to apply FSA [earned time credits] towards early release," and her "records will update at some point in the near future, which could be as early as this month." *Id.* at PageID.94. Pursuant to Local Rule 7.1(d), the court elects to decide the Petition without a hearing.

## II. **DISCUSSION**

In the Petition, Alatorre asserts that the BOP wrongfully deemed her ineligible for First Step Act earned time credits because she is subject to an immigration detainer. *See* ECF No. 1 at PageID.1; ECF No. 1-1 at PageID.4. Derr argues that the Petition should be dismissed as moot because Change Notice 5410.01 struck the language from the previously issued Program Statement 5410.01 that had precluded federal prisoners with unresolved immigration detainers from applying earned time credits toward prerelease custody or early

5

transfer to supervised release. *See* ECF No. 10 at PageID.33. For the following reasons, the court agrees with Derr that the Petition is now moot.

**A.     The Mootness Doctrine and Its Voluntary Cessation Exception**

"The case or controversy requirement of Article III . . . deprives federal courts of jurisdiction to hear moot cases." *Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1208 (9th Cir. 2021) (internal quotation marks and citation omitted). "A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Pizzuto v. Tewalt*, 997 F.3d 893, 903 (9th Cir. 2021) (internal quotation marks and citation omitted); *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019) ("When subsequent events resolve the dispute, such that no live issues remain or the parties lack a legally cognizable interest in the outcome, a case becomes moot.") (citation omitted). "A case that becomes moot at any point during the proceedings is 'no longer a 'Case' or 'Controversy' for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (citation omitted).

Subject to certain conditions, voluntary cessation of improper conduct does not necessarily deprive the court of jurisdiction:

> It is well-established, however, that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case" unless "it can be said with assurance that 'there is no reasonable expectation . . .' that the

6

alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."

*Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1037 (9th Cir. 2018) ("*Fikre I*"); *see also Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179 (9th Cir. 2010) ("Courts are understandably reluctant to declare a case moot based on the defendant's voluntary cessation of the challenged activity.") (citations omitted); *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision.") (internal quotation marks and citation omitted) (alterations in original).

Although the government receives greater deference than private parties and is presumed to act in good faith when it changes a policy, see *Am. Cargo Transp., Inc.*, 625 F.3d at 1180, if "the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again," *Rosebrock*, 745 F.3d at 971. When the government's mootness argument is based on a policy change, the Ninth Circuit has said that mootness is more likely if: (1) the policy change is evidenced by language that is broad in scope and unequivocal in tone; (2) the policy change fully addresses all of the objectionable measures taken by the government; (3) the case in question was the catalyst for the agency's adoption of

the new policy; (4) the policy has been in place for a long time; and (5) since the policy's implementation, agency officials have not engaged in similar conduct. *Id.* at 972. The Ninth Circuit has made clear that these considerations "do not provide an exhaustive or definitive list." *Id.* at 972 n.10; *see also Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) (describing these considerations as only a "loose framework"). In contrast, mootness is less likely if the new policy could be "easily abandoned or altered in the future." *Rosebrock*, 745 F.3d at 972 (internal quotation marks and citation omitted).

**B.     Alatorre's Claim Is Moot and the Voluntary Cessation Exception Does Not Apply**

Alatorre asserts that the BOP wrongfully deemed her ineligible for earned time credits because she is subject to an immigration detainer. *See* ECF No. 1 at PageID.1; ECF No. 1-1 at PageID.4.

Under 18 U.S.C. § 3632(d)(4)(A), federal prisoners may be eligible to earn time credits for successfully completing evidence-based recidivism reduction programming or productive activities. Specifically, 18 U.S.C. § 3632(d)(4)(A)(i) states that "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i); 28 C.F.R. § 523.42(c)(1). Depending on the risk of recidivism, prisoners can earn an additional five days of time credits for every 30 days of successful participation in qualified programming

or activities. 18 U.S.C. § 3632(d)(4)(A)(ii); 28 C.F.R. § 523.42(c)(2). Time credits earned under 18 U.S.C. § 3632(d)(4) "shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

Section 3632 also states, however, that certain prisoners are statutorily ineligible to apply earned time credits. For example, federal prisoners who are "subject to a final order of removal under any provision of the immigration laws" cannot apply earned time credits. 18 U.S.C. § 3632(d)(4)(E)(i); *see also* 28 C.F.R. § 523.44(a)(2) (stating that, for any prisoner who is "[s]ubject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (*see* 18 U.S.C. 3632(d)(4)(E)), the [BOP] may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release").

On November 18, 2022, the BOP issued Program Statement 5410.01, *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*. *See* ECF No. 10-5. Program Statement 5410.01 expanded 18 U.S.C. § 3632(d)(4)(E)(i)'s limitation relating to prisoners subject to a "final order of removal" to include also prisoners with "unresolved immigration status." *Id.* at PageID.78. Specifically, the original Program Statement 5410.01 stated that although "inmates with unresolved pending charges and/or detainers may earn [time credits] . . . they will be unable to apply them to prerelease custody or release to supervision unless the charges and/or detainers are resolved." *Id.* Program

9

Statement 5410.01 further stated that "[a]n inmate with an unresolved immigration status will be treated as if he/she has unresolved pending charges with regard to the application of [time credits]." *Id.* In addition, Program Statement 5410.01 stated that up to 365 days of earned time credits would be automatically applied to early release for prisoners who meet six criteria, including having "no detainers or unresolved charges, to include unresolved immigration status." *Id.* at PageID.81. Because of these portions of Program Statement 5410.01, prisoners with immigration detainers, even if they were not subject to a final order of removal, could not apply earned time credits.

        Federal prisoners subject to immigration detainers began filing habeas petitions challenging these portions of Program Statement 5410.01. At least two district courts concluded that these portions of Program Statement 5410.01 were inconsistent with the plain language of 18 U.S.C. § 3632(d)(4)(E)(i). *See Sierra v. Jacquez*, 2022 WL 18046701, at *3 (W.D. Wash. Dec. 27, 2022) ("The statute's language specifically excludes only prisoners with a final order of removal from eligibility to apply FSA time credits and contains no language that also includes prisoners who are removable or who have immigration detainers."), *report and recommendation adopted*, 2023 WL 184225 (W.D. Wash. Jan. 13, 2023); *Komando v. Luna*, 2023 WL 310580, at *6 (D.N.H. Jan. 13, 2023) ("Potentially removable noncitizens who are *not* the subject of final orders of removal are not

within the scope of subparagraph [18 U.S.C. § 3632(d)(4)(E)(i)]."), *report and recommendation approved sub nom. Komando v. FCI Berlin, Warden*, 2023 WL 1782034 (D.N.H. Feb. 6, 2023). Because of these decisions, district courts granted habeas relief to numerous federal prisoners subject to immigration detainers who had sought application of their earned time credits. *See, e.g.*, *Order, Pierre v. Warden, FCI Berlin*, Civil No. 22-cv-412-AJ (D.N.H. Jan. 20, 2023), ECF No. 10; *Obregon v. Warden, FCI Berlin*, Civil No. 22-cv-258-AJ (D.N.H. Jan. 20, 2023), ECF No. 15; *Gonzalez v. Warden FCI Berlin*, Civil No. 22-cv-540-AJ (D.N.H. Jan. 20, 2023), ECF No. 13.

On February 6, 2023, the BOP issued Change Notice 5410.01. *See* ECF No. 10-5 at PageID.62–PageID.64. Change Notice 5410.01 struck from Program Statement 5410.01, among other things, the language relating to prisoners with "unresolved immigration status." *Id.* at PageID.63. As a result of Change Notice 5410.01, federal prisoners subject to immigration detainers are no longer automatically prohibited from applying their earned time credits. *See* ECF No. 14-2 at PageID.103 ("Inmates with detainers or unresolved pending charges, including unresolved immigration detainers, are no longer excluded [from applying earned time credits].").

Citing Change Notice 5410.01, Derr asserts in her Response that Alatorre "will no longer be FSA ineligible based upon her unresolved immigration

11

detainer[.]" ECF No. 10 at PageID.33. Indeed, Derr states in her latest filing that Alatorre's "sentencing monitoring data . . . has been updated to reflect her eligibility to apply FSA [earned time credits] towards early release." ECF No. 14 at PageID.94. Thus, Alatorre's claim that the BOP wrongfully deemed her ineligible to apply earned time credits solely because of her immigration detainer is now moot, unless an exception applies.

Alatorre argues that the voluntary cessation exception applies because Change Notice 5410.01 CN-1 is not "entrenched or permanent." ECF No. 13 at PageID.87–PageID.88. In support of her position, Alatorre cites the Ninth Circuit's decisions in *Fikre*. *Id.*; *see Fikre I*, 904 F.3d 1033; *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762 (9th Cir. 2022) ("*Fikre II*"). The facts in the two *Fikre* decisions, however, are readily distinguishable from the facts in this case.

In *Fikre I*, the plaintiff filed a lawsuit alleging that government agencies and officers violated his rights by placing and maintaining his name on the No Fly List. 904 F.3d at 1035. Because his name was included on this list, the plaintiff had been imprisoned and tortured for 106 days after landing in the United Arab Emirates. *Id.* While the lawsuit was pending, the government removed the plaintiff's name from the list and the district court dismissed some of the plaintiff's claims as moot. *Id.* The Ninth Circuit reversed the district court's decision, explaining that "the mere announcement that [the plaintiff] was removed from the

12

list" was not enough. *Id.* at 1039. The court noted that the plaintiff's "removal from the No Fly List was more likely an exercise of discretion than a decision arising from a broad change in agency policy or procedure," and the plaintiff was given no assurances that he would not be "banned from flying for the same reasons that prompted the government to add him to the list in the first place." *Id.* at 1040.

On remand, the government submitted a declaration stating that the plaintiff had been removed from the No Fly List and that he would not be placed on the list in the future "'based on currently available information.'" *Fikre II*, 35 F.4th at 767. The district court again dismissed some of the plaintiff's claims as moot. *Id.* at 768. The Ninth Circuit reversed the district court's decision noting that the plaintiff's removal from the No Fly List appeared to be an individualized determination rather than a change in policy, it was unclear if the government would return the plaintiff to the list, and the government did not identify procedural safeguards regarding any future placement of the plaintiff on the list. *Id.* at 770–73.

Here, unlike in the *Fikre* decisions, the BOP did not make an individualized change based solely on Alatorre's circumstances. Instead, Change Notice 5410.01 struck language from Program Statement 5410.01 that had limited *all* federal prisoners with immigration detainers from applying earned time credits. Thus, Change Notice 5410.01 reflects a broad policy change ensuring that all

13

"inmates [who] are not subject to a final order of removal under immigration laws will have up to 365 days of [earned time credits] automatically applied to early transfer or supervised release." ECF No. 14-2 at PageID.103. Moreover, while it was unclear in the *Fikre* decisions if the government would resume the challenged conduct, here it is extremely unlikely that the BOP will resurrect the language stricken from Program Statement 5410.01 given the multiple court decisions concluding that that language was inconsistent with the text of 18 U.S.C. § 3632(d)(4)(E)(i). *See Sierra*, 2022 WL 18046701, at *2–4; *Komando*, 2023 WL 310580, at *6.

In addition, the consequences of the alterations made by Change Notice 5410.01 are unmistakable: an immigration detainer, without more, no longer precludes a federal prisoner from applying earned time credits. *See Rosebrock*, 745 F.3d at 972 (noting that unequivocal tone of policy change is relevant consideration). Change Notice 5410.01 therefore fully addresses the restriction imposed by the BOP in Program Statement 5410.01 on prisoners subject to immigration detainers, which was the basis for Alatorre's claim in this action, *see id.* (noting that whether policy change fully addresses objectionable measures is a relevant consideration), and nothing suggests that the BOP has refused to apply earned time credits for a prisoner solely because of an immigration detainer since Change Notice 5410.01's issuance, *see id.* (asking whether government officials

14

have engaged in similar conduct since policy change). Although Change Notice 5410.01 has not been in place for long and it is not apparent that Alatorre's action prompted the BOP's policy change, the court is nonetheless convinced that the BOP's complained-of conduct cannot reasonably be expected to recur.[4] *See Am. Diabetes Ass'n*, 938 F.3d at 1154 ("Under these circumstances, defendants have satisfied their burden of clearly showing they cannot reasonably be expected to reinstitute the Old Policy's blanket ban.").

### III. CONCLUSION

1. The specific issue presented in the Petition—that is, Alatorre's eligibility to apply good time credits despite her immigration detainer—has been resolved in Alatorre's favor. Thus, there is no longer a concrete case or controversy. The Petition is therefore DISMISSED without prejudice, but without leave to amend.

2. The Clerk is DIRECTED to close this case.

---

[4] To the extent Alatorre asserts that her earned time credits are not yet reflected in her projected release date, *see* ECF No. 11 at PageID.84, this is unsurprising. Change Notice 5410.01 was issued only on February 6, 2023, and the BOP should be allowed a reasonable period to recalculate the projected release dates for those prisoners affected by the policy change. In this instance, Derr states that Alatorre's "records will update at some point in the near future, which could be as early as this month." ECF No. 14 at PageID.94. According to Derr, Alatorre "will likely receive the maximum 365 days of FSA credits once applied, which will move [her] projected release date up to August 5, 2024." *Id.* If, after Alatorre's time credits are applied, she has concerns regarding the calculation of her sentence, she should raise these concerns through the BOP's administrative remedy program. *See Cacayorin*, 2023 WL 2349596, at *3.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 22, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Alatorre v. Derr*, Civ. No. 22-00516 JMS-WRP, Order Dismissing Writ of Habeas Corpus Pursuant to U.S.C. § 2241, ECF No. 1